UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


LOUIS C. ZANZOTTERA,                    )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        No.   4:13CV1963 TIA
                                        )
CAROLYN W. COLVIN,                      )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

    This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Applications for Disability Insurance Benefits under Title II of the Social Security

Act and for Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief

in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer,

and Claimant filed a Reply thereto.  The parties consented to the jurisdiction of the undersigned

pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

    Claimant Louis Carlo Zanzottera filed Applications for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 220-

23)[1] and Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq.  (Tr.

223-32).  Claimant states that his disability began on February 21, 2007, as a result of problems

with his hands, legs, and knees, heart problems, arthritis, and missing left index finger.  (Tr. 118).

_____
    [1]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer
(Docket No. 15/filed December 20, 2013).

On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 122-26). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 127-31). On September 15, 2010, a hearing was held before the ALJ who issued an unfavorable decision on October 21, 2009. (Tr. 32-51, 95-104). On November 12, 2009, Claimant filed a Request for Review of Hearing Decision, and the Appeals Council granted the request for review, vacated the hearing decision, and remanded the case to the ALJ to address certain matters on September 26, 2012. (Tr. 117-20). In relevant part, the Appeals Council directed the ALJ to resolve the following issues prior to the period to October 26, 2010: (1) to evaluate his obesity; (2) to assess limitations related to the partial amputation of his left index finger; (3) to consider whether he can return to his past relevant work as a cook and a coin machine collector; (4) to obtain evidence from an orthopedic medical expert; and (5) to obtain evidence from a vocational expert. (Tr. 118-19). The Appeals Council also affirmed the finding by the state agency that Claimant was disabled beginning on October 26, 2010. (Tr. 20).

On February 27, 2013, a subsequent hearing was held before the ALJ. (Tr. 52-78). Claimant testified and was represented by counsel. (Id.). Medical Expert Dr. Anne E. Winkler testified at the hearing. (Tr. 55-58, 170-76). Vocational Expert Gerald D. Belchick, Ph.D., also testified at the hearing. (Tr. 67-74, 177-78). Thereafter, on April 16, 2013, the ALJ issued a decision denying Claimant's claims for benefits finding he was not disabled during the adjudicative period before him, February 21, 2007 through October 25, 2010. (Tr. 16-26). After considering the representative brief, the Appeals Council found no basis for changing the ALJ's decision on September 3, 2013. (Tr. 1-6, 8-15, 328-32). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

II.     **Evidence Before the ALJ**

   **A. Hearing on September 15, 2010**

      **1. Claimant's Testimony**

At the hearing on November 7, 2012, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 34-51). At the time of the hearing, Claimant was sixty years of age. (Tr. 34). He completed the eleventh grade and attended the police academy. (Tr. 35). He is right-handed and stands at 5'7" and weighs 233 pounds. (Tr. 37).

Claimant lost part of his index finger while helping a friend on a weekend job. (Tr. 38). He testified that he cannot control his left hand and has problems gripping. (Tr. 41). He had bypass surgery in 1996. (Tr. 38).

   **B. Hearing on February 27, 2013**

      **1. Claimant's Testimony**

At the hearing on February 27, 2013, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 61-67). From 1995-96, he worked as a meter collector/ maintenance man and installed meters with a jack hammer. (Tr. 62). His duties included collecting money and performing maintenance on parking meters. (Tr. 64). Claimant testified that he was fired because he could not perform his duties. He had problems fumbling with the keys to unlock the meters to collect the money. (Tr. 66). He worked from 1999-2004 at Grone Cafeteria serving customers on the line and sometimes working as a cook preparing food and carving meat. (Tr. 62, 74). He left that job when the cafeteria closed. (Tr. 76). Next, he worked at Sinclair, a gas station, three days a week but his days were reduced because he could not perform his duties such as lifting and unable to grasp. (Tr. 63).

## 2. Testimony of Vocational Expert

Vocational Expert Dr. Gerald Belchick testified in response to the ALJ's questions. (Tr. 67-74). Dr. Belchick described Claimant's past work as including a maintenance job, an unskilled job between medium to heavy exertional level; and a line server in a cafeteria, a semi-skilled job; and a cook. (Tr. 65).

The ALJ asked Dr. Belchick to assume

a hypothetical claimant could lift or carry 50 pounds occasionally, 25 pounds frequently. Stand or walk for six hours out of eight, sit for six, could occasionally climb stairs, and ramps. Never ropes, ladders, or scaffolds. Occasionally crawl, and avoid concentrated exposure to unprotected heights. With that particular residual functional capacity, keep all three jobs?

(Tr. 71). Dr. Belchick responded yes. (Tr. 71).

## 3. Testimony of Medical Expert Dr. Anne E. Winkler

The ALJ explained how they were going to review two different time periods from February 21, 2007 until October 25, 2010. (Tr. 55). Dr. Winkler noted during the relevant time period, Claimant had mild cervical degenerative disc disease, hypertension, obesity, a missing fuse joint on a third finger and a missing second finger on his left hand, and mild osteoarthritis in his left PNC joint. (Tr. 55). Dr. Winkler noted how the x-rays of his knees show some calcification in the muscles without significant impairment and later on in 2011, testing showed degenerative disc disease in his lumbar spine. (Tr. 56).

Dr. Winkler opined Claimant would be able to lift and carry 50 pounds occasionally; 25 pounds frequently; and walk at least six hours in an eight hour work day with no limits of sitting. (Tr. 56). Further, Dr. Winkler found he should never climb ropes or scaffolds; and he could frequently balance, kneel, or crouch and occasionally crawl. Based on her review of the record

and the varying assessments in the record and his last assessment indicating normal grip of both hands, Dr. Winkler did not find Claimant to have any manipulative limitations and that the amputation on his left hand would not affect his ability to lift weights. With respect to environmental limitations, she found Claimant should avoid unprotected heights. (Tr. 56). Dr. Winkler noted how a lifting limitation of no more than 10 pounds was recommended after his hernia surgery in May 2011, but she explained how usually six weeks post op there are no restrictions unless a recurring hernia, he would be limited in lifting 25 pounds frequently and occasionally. (Tr. 57).

Counsel noted how the consultative examiner, Dr. Loretta Mendoza, found his grasp to be poor in his left hand in 2009. (Tr. 58). The ALJ opined that is why he indicated there were inconsistent records citing how in 2005 and 2011 records reflect how he has a normal grasp. (Tr. 58).

### 4. Forms Completed by Claimant

In the Work Activity Report - Employee, Claimant reported working at Hampton Expressmart twenty-four hours a week from June 2006 through May 2008, and he stopped working because of his medical condition. (Tr. 257-58). He did not require any special work conditions. (Tr. 259).

In the Disability Report - Field Office, the interviewer noted Claimant to be a poor historian. (Tr. 265-68).

In the Function Report - Adult, he listed taking a shower, trying to help with things around the apartment, and watching television as his daily activities. (Tr. 269-70). He does the laundry twice a week and puts the dishes in the dishwasher. (Tr. 271). He can drive a car and

goes shopping once a week.  (Tr. 272).  Claimant reported because he does not have insurance, he is not able to see doctors and receive medications.  (Tr. 276).

In the Disability Report - Adult, Claimant reported he cannot hold anything heavy or grip with his left hand, and these conditions first interfered with his ability to work in February 2007.  (Tr. 281).  He worked after the alleged onset date of disability as needed at Hampton Expressmart, but he employer terminated him because he could not lift a case of beer.  (Tr. 281).

Claimant listed cook, meter collector, concrete finisher, and maintenance man as his past jobs in the Work History Report.  (Tr. 288-99).  He last worked in February 2007 as a maintenance man cleaning the printing press, sweeping the floors, and emptying the trash.  (Tr. 293).

In the Disability Report - Appeal, Claimant reported having difficulty going up steps and even carrying a case of soda.  (Tr. 309-14).

## III.    Medical Records and Other Records

In the August 1997 treatment notes from Deaconess Health System, the doctor performing the physical examination noted Claimant to be obese, and there are other references to him being obese.  (Tr. 339, 343, 345, 351).  His weight is listed as an estimated 250 pounds.  (Tr. 406).

Claimant lost one of his fingers at work in 1996.  (Tr. 339).

Claimant presented in the emergency room at Barnes-Jewish Hospital on May 15, 2004, for treatment after being in a motor vehicle accident (Tr. 427-42).  He reported he had been drinking.  (Tr. 442).  The doctor observed Claimant seemed to be slightly intoxicated.  (Tr. 443).

In response to the request for medical records, Dr. Human Farah noted that the patient has

not been seen since 2005.  (Tr. 315).

On December 12, 2005, Dr. Sawwath Bhattacharya completed an internal medicine examination on referral by Disability Determinations.  (Tr. 444).  Claimant reported last working as a meat carver and cook in a cafeteria, but the cafeteria closed down.  (Tr. 444).  He reported being able to walk five blocks, to stand and sit okay, and lift 25 pounds.  (Tr. 445).  He does all of his housework and can drive.  (Tr. 445).  He weighed 225 pounds.  (Tr. 446).  Examination showed no paravertebral muscle spasm or tenderness.  Dr. Bhattacharya observed his gait to be within normal limits and no difficulty getting up and down the examination table, and noted he is able to walk on his heels and his toes.  (Tr. 446).  Dr. Bhattacharya noted his left index finger was amputated from the proximal interphalangeal joint and observed somewhat decreased movement in the metatarsophalangeal joint and his hand grip slightly reduced.  (Tr. 447).  In the Range of Motion Values, Dr. Bhattacharya rated his grip strength as a four out five in his left hand and a four plus out of five in his right hand.  (Tr. 449).  Dr. Bhattacharya found his handgrips to be slightly reduced but functional and listed overweight as a clinical impression.  (Tr. 447).

On December 22, 2009, Dr. Loreeta Mendoza completed an internal medicine examination.  (Tr. 479).  Claimant's chief complaints were problems with his hands, legs and knees, mostly arthritis and heart problems.  Claimant reported how he has not seen a doctor since 2006.  Dr. Mendoza found he does not have grip strength in his left hand.  (Tr. 479).  In the Range of Motion Values, Dr. Mendoza rated his grip strength as a three out of five in his left hand and a five out of five on his right hand.  (Tr. 484).  Dr. Mendoza noted how "[h]e did not complain at all as far as the heart is concerned."  (Tr. 480).  He cleans the apartment, cooks and goes to the grocery store.  (Tr. 480).  Examination of his back showed a full range of motion with

no difficulty. (Tr. 481). He is right-handed. Dr. Mendoza noted he is missing the index finger on his left hand. She observed his gait to be essentially normal and able to toe walk and heel walk. (Tr. 481). In the Clinical Impression, Dr. Mendoza noted he has less grip in the left hand, and he has osteoarthritis in both knees. (Tr. 482).

On February 23, 2010, Claimant sought treatment so he could get back on medications since he had been off medications for five years, and reported that he had no complaints. (Tr. 495, 547). He reported having a triple bypass in 1997 and only taking aspirin daily even though he was supposed to be on a statin and a beta blocker. In the History of Present Illness, Dr. Robert Baird noted: Patient's words: "pt is here for disability." Dr. Baird assessed hyperlipidemia and hypertension, benign and noted to follow-up in two months as needed. (Tr. 495, 547). In the Nurse's Exit Note, noted how disability forms were given to JCM. (Tr. 496, 548).

On April 20, 2010, Dr. Baird treated Claimant in a routine follow-up, and he requested a refill of his nasal spray. (Tr. 493, 545). The cardiovascular examination showed normal heart sounds, regular rate, and rhythm with no murmurs. Dr. Baird assessed osteoarthritis and requested follow-up in six months. (Tr. 493, 545). In follow-up treatment on November 29, he returned for a medication refill and lower back pain for one week. (Tr. 541). He reported feeling well with minor complaints including running out of his medications, back hurting, decreased energy, and sleeping poorly. (Tr. 541). Dr. Baird prescribed Cyclobenzaprine. (Tr. 542). Dr. Baird encouraged him to exercise for at least thirty minutes each day five or more days a week. (Tr. 543). Suggested exercise included brisk walking, dancing, biking, or any other type of physical activity that elevates the heart rate. (Tr. 543).

On July 6, 2011, Dr. Inna Park completed an internal medicine examination on referral by disability determinations. (Tr. 583). He reported back pain starting ten years earlier but never having any injections, physical therapy, or chiropractic care for this pain. (Tr. 584). Two years earlier he would walk five miles a day but he now has difficulty walking two blocks. (Tr. 584). In 1996, he sustained trauma to his left index finger resulting in the amputation. Claimant reported living with his ex wife and being right-hand dominant. (Tr. 584). Examination showed some tenderness at the mid lumbar spine and into the right sacroiliac region and the right femoral head. (Tr. 586). Examination showed some decreased range of motion of his knees. Dr. Park observed Claimant get on and off the examination table without difficulty. Dr. Park observed he walks on his toes and heels without difficulty and squats about fifty percent complaining of pain. (Tr. 586). Dr. Park found that he would require alternating between sitting, standing, and walking to maintain comfort in his lower back, and any prolonged walking would be difficult. (Tr. 587). Dr. Parks also found any heavy lifting would be difficult, and repetitive motions of his hands may also be difficult. (Tr. 587). The x-ray showed degenerative disc disease of the lumbar spine. (Tr. 588). In the Range of Motion Values, Dr. Park found Claimant to have grip strength rated at five and ability to make a fist in both hands; and his fingers can be opposed and his hands fully extended. (Tr.590).

IV.    **The ALJ's Decision**

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2011. (Tr. 22). Claimant has not engaged in substantial gainful activity since February 21, 2007, the amended alleged onset date. The ALJ found that the medical evidence establishes that Claimant has the severe impairments of mild degenerative disc

disease of the cervical spine and a partial amputation of the left index finger, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ found that Claimant has the residual functional capacity to perform medium work lifting twenty-five pounds frequently and fifty pounds occasionally.  He can occasionally climb ramps and stairs, but he should never climb ropes, ladders, and scaffolds.  The ALJ further found he can occasionally crawl, but he should avoid concentrated exposure to unprotected heights.  (Tr. 22).  Claimant is able to perform his past relevant work as a meter collector, laborer, and a cafeteria line worker inasmuch as these jobs do not require the performance of work-related activities precluded by his RFC based on the testimony of the vocational expert.  (Tr. 25).  The ALJ concluded that Claimant has not been under a disability from February 21, 2007, through October 25, 2010.  (Tr. 26).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated Regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-42 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274

F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to
        exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the
        claimant's impairments.

6.      The testimony of vocational experts when required which
        is based upon a proper hypothetical question which sets forth the claimant's
        impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole."

Wiese , 552 F.3d at 730 (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the Court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the Court] may have reached a different outcome."); Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess his credibility and formulate his RFC. Claimant also contends that the ALJ failed to address his obesity. Finally, Claimant argues that the ALJ failed to explicitly weigh the medical source opinions.

## A.     Residual Functional Capacity and Credibility Determination

Claimant contends that the ALJ erred in formulating the RFC inasmuch as the RFC is not supported by relevant evidence from the adjudicative period and his credibility assessment is legally unsound.

A claimant's RFC is what he can do despite his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish his RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. Id.

The ALJ opined that Claimant has the residual functional capacity to perform medium work lifting 25 pounds frequently and 50 pounds occasionally and occasionally crawl and climb ramps and stairs but never climb ropes, ladders, and scaffolds.

In his decision the ALJ thoroughly discussed the medical evidence of record, activities of daily living, limited medical treatment, and inconsistencies in the record. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several

- 14 -

inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed functional limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

Further, the ALJ noted that Claimant's finger was amputated in 1996, but he continued to perform substantial gainful activity after that time. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). Further, as noted by the ALJ, Claimant stopped performing his past relevant work when the cafeteria closed. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart,

348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).

Likewise, the ALJ noted how the medical record is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition). A review of the medical record shows that Claimant has not reported to providers significant symptoms or limitations stemming from the partial amputation of the left index finger as he alleges herein. Moreover, he is right-handed dominant. While his left handgrip has been found to be slightly reduced, it is noted as functional.

The undersigned notes how the medical record shows a four-year gap in treatment from May 2006 until February 2010 undermines Claimant's credibility concerning his disabling impairments. Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility). Such gap suggests that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective

complaints). Seeking limited medical treatment is inconsistent with claims of disabling pain.

Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991). Despite alleging disability since

February 2007, Claimant did not seek medical treatment until February 2010, three years after his

alleged onset date. Claimant received treatment only a couple of times during the relevant time

period, and he did not complain of any left hand difficulty. The ALJ noted that he did not have

health insurance during this time, but the record is devoid of any evidence suggesting that

Claimant sought any treatment offered to indigents. See Nelson v. Sullivan, 966 F.2d 363, 367

(8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with

complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it

is inconsistent with the degree of pain and disability asserted where no evidence exists that

claimant attempted to find any low cost medical treatment for alleged pain and disability). The

record does not document that Claimant was ever refused treatment due to insufficient funds. See

Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may

justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he

related of an inability to afford prescriptions and denial of the medication); Riggins v. Apfel, 177

F.3d 689, 693 (8th Cir. 1999); Murphy, 953 F.2d at 386 (If a claimant is unable to follow a

prescribed regimen of medication and therapy to combat his difficulties because of financial

hardship, that hardship may be taken into consideration when determining whether to award

benefits). Here, as the ALJ points out, the record is devoid of any credible evidence showing that

Claimant was denied treatment due to lack of finances and thus inferred that Claimant did not

seek more frequent medical treatment more often, because he did not have a medical need for

such treatment. Case law permits the ALJ's reasonable inferences. See Pearsall, 274 F.3d at

1218.

The ALJ also properly considered the inconsistencies between Claimant's allegations and his daily activities. Claimant retained the ability to do household chores, laundry, wash dishes, watch television, and read. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain). Likewise, the undersigned notes in a treatment note, Dr. Baird encouraged him to exercise five times a week.

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). The ALJ determined that the medical evidence supported a finding that Claimant could perform medium work. The vocational expert testified in response to a hypothetical question, that incorporated the same limitations as the RFC, and opined that such individual could perform his past relevant work as a meter collector, a laborer, and a cafeteria line worker.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in

making his credibility determination, a reading of the decision in its entirety shows the ALJ to

have acknowledged and considered the factors before discounting Claimant's subjective

complaints.  See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ

expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a

whole, and the ALJ's determination is supported by substantial evidence, such determination

should not be disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).

Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not

entirely credible, the undersigned defers to the ALJ's credibility findings.  See Leckenby v. Astrue,

487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is

supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798,

801(8th Cir. 2005).

       The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility.  The ALJ may disbelieve subjective complaints where there are inconsistencies on the

record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out

inconsistencies in the record that tended to militate against the Claimant's credibility.  See

Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence).  Those included Claimant's medical

evidence of record, activities of daily living, limited medical treatment, and inconsistencies in the

record. The ALJ's credibility determination is supported by substantial evidence on the record as a

whole, and thus the Court is bound by the ALJ's determination.  See Cox v. Barnhart, 471 F.3d

902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  Accordingly,

the ALJ did not err in discrediting Claimant's subjective complaints of pain.  See Hogan v. Apfel,
239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain
were not fully credible based on findings, inter alia, that claimant's treatment was not consistent
with amount of pain described at hearing, that level of pain described by claimant varied among
her medical records with different physicians, and that time between doctor's visits was not
indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the
record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this
Court may not reverse the decision merely because substantial evidence exists in the record that
would have supported a contrary outcome or because another court could have decided the case
differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the
ALJ denying Claimant's claims for benefits should be affirmed.

**B.    Obesity**

Claimant's contention that the ALJ failed to take into account his obesity when
formulating his RFC is without merit.  Obesity is to be considered a "severe" impairment when,
alone or in combination with another medically determinable physical or mental impairment(s), it
significantly limits an individual's physical or mental ability to do basic work activities."  Social
Security Ruling 02-10p, 2000 WL 628049, *4 (S.S.A. 2002).  The Regulations provide that:

> [o]besity is a medically determinable impairment that is often associated with
> disturbance of the musculoskeletal system, and disturbance of this system can be a
> major cause of disability in individuals with obesity.  The combined effects of
> obesity with musculoskeletal impairments can be greater that the effects of  each of
> the impairments considered separately.  Therefore, when determining whether an
> individual with obesity has a listing-level impairment or combination of
> impairments, and when assessing a claim at other steps of the sequential evaluation

process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpart P, Appx. 1, § 1.00(Q).

In the instant case, Claimant did not allege obesity as a disabling condition on his applications,[2] on forms he completed, including the Disability Report he completed pursuant to his applications, or in his hearing testimony. In McNamara v. Astrue, 590 F.3d 607, 611 (8th Cir. 2010), the Eighth Circuit rejected an argument that the ALJ had erred by failing to discuss in her decision the claimant's obesity "as a potential work-related limitation." The court noted that no physician had "ever placed physical limitations on [the claimant's] ability to perform work-related functions because of her obesity." Id. No had she described such in an application report or in her testimony. Id.

It is important to note that all of Claimant's treating and examining doctors were aware of his obesity, but none of the doctors who examined or treated Claimant provided an opinion or imposed limitations greater than that identified by the ALJ. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that Forte was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions."). The Eighth Circuit found that the omission of obesity did not constitute reversible error. Id. at 612. The ALJ's consideration of these medical records demonstrates that the ALJ necessarily considered his obesity. Further,

---

[2]The undersigned notes that the fact that Claimant did not allege obesity in his applications for disability benefits is significant See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity). Further, Claimant did not testify at the hearing that his obesity affected his ability to function.

Claimant presented no evidence that his obesity imposed work-related limitations or that he testified as to any limitations related to his obesity. See McNamara v. Astrue, 590 F.3d 607, 611-12 (8th Cir. 2010). In McNamara, like the instant case, the ALJ did not make any finding regarding Claimant's obesity. The Eighth Circuit rejected McNamara's argument that the failure to discuss obesity was a legal error. Id. at 611.

Although the decision does not specifically discuss his obesity on his ability to perform work-related activities, the decision clearly supports the finding that he did not have an impairment or combination of impairments that met or equaled one of the listed impairments. The ALJ's decision demonstrates that the ALJ properly considered his impairments in combination. The ALJ specifically found that Claimant did not have an impairment or "combination of impairments" that met or equaled a listing. The Eighth Circuit has stated that "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1997). The ALJ then stated that he considered all of Claimant's medically determinable impairments when evaluating his credibility. See 20 C.F.R. §§ 404.1523, 416.923. The ALJ further stated that he considered the "entire record" when determining his RFC.

Likewise, the undersigned finds the record is devoid of any evidence supporting Claimant's contention that his obesity is a severe impairment. First, Claimant never alleged that his obesity was disabling, and he presented no medical evidence substantiating this claim. Claimant never alleged any limitation in function as a result of his obesity in his application for benefits. In the instant case, Claimant did not cite any physical limitations caused by his obesity in reports or in his testimony. Indeed, the medical evidence is devoid of any support. In follow-up

treatment, Dr. Baird encouraged him to exercise for at least thirty minutes each day five or more days a week and suggested exercise included brisk walking, dancing, biking, or any other type of physical activity that elevates the heart rate. Accordingly, this claim is without merit.

"Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Kamman v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). For the reasons set forth above, Claimant has failed to carry this burden. McNamara, 590 F.3d at 611-12 (claimant's failure to testify about any work-related limitations caused by allegedly disabling condition undermined claim).

## C.    Failure to Consider Impairments as Severe

Step two of the five-step evaluation provides that a claimant is not disabled if her impairments are not "severe" and have lasted or are expected to last for at least 12 months. 20 C.F.R. § 416.920(a)(4)(ii); § 416.909 (duration requirement). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairment are severe. Id.. "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard." Id. at 708 (citations omitted).

The ALJ found Claimant to have the severe impairments of mild degenerative disc disease of the cervical spine and partial amputation of the left index finger, and the nonsevere impairment of hypertension, a fused joint on the third left finger, and muscle calcification of the knees. (Tr. 22). The ALJ's determination is supported by substantial evidence in the record. The ALJ rejected his claim of severe impairment due to muscle calcification of the knees by citing how the

record contains the January 19, 2010 x-ray of his knees showing there was calcification at attachment of quadriceps and patella tendon to the superior, but no degenerative changes within the right knee joint.  The x-ray further showed the same calcification in quadriceps attachment to patella as on right.  Likewise, the ALJ rejected his claim of severe impairment due to hypertension by citing to the February 23, 2010 treatment note where Dr. Baird assessed his hyperlipidemia and hypertension as benign.  The ALJ correctly relied on the medical evidence in finding these impairment to be not severe, medically-determinable impairment.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**D.** **Medical Source Opinions**

Finally, Claimant argues that the ALJ failed to explicitly weigh the medical source opinions.  He contends that remand is necessary so that the ALJ can explicitly explain the weight he afforded to the non-examining medical expert witness, Dr. Winkler.

Because Drs. Bhattacharya, Mendoza, and Park did not treat Claimant and only performed consultative examinations, their opinions are not entitled to controlling weight.  See Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("A single evaluation by a nontreating [medical source] is generally not entitled to controlling weight.").  Nevertheless, the ALJ is required to consider every medical opinion he or she receives.  See C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of

the source, we will evaluate every medical opinion we receive.").  Where an opinion is not given

controlling weight as the opinion of a treating source, the weight given to the opinion depends on

a number of factors, including whether the source has examined the claimant, whether and how

often the source has treated the claimant, the relevant evidence provided in support of the

opinion, the consistency of the opinion with the record as a whole, whether the opinion is related

to the source's area of speciality, and other factors.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Opinions from non-treating sources are evaluated using factors set forth in 20 C.F.R. §§

404.1527(d) and 416.927(d).

At the hearing, Dr. Winkler, a non-examining medical expert, testified that based on her

review of the record and the varying assessments[3] in the record including the last assessment

indicating normal grip of both hands, Dr. Winkler did not find Claimant to have any manipulative

limitations and that the amputation on his left hand would not affect his ability to lift weights.

The ALJ discussed the consultative opinions and found the impairments did not impose

limitations of such significance as to preclude sustained competitive employment.  The ALJ noted

_____

[3]On December 12, 2005, Dr. Sawwath Bhattacharya completed an internal medicine
examination on referral by Disability Determinations and noted his left index finger was amputated
from the proximal interphalangeal joint and observed somewhat decreased movement in the
metatarsophalangeal joint and his hand grip slightly reduced.  In the Range of Motion Values, Dr.
Bhattacharya rated his grip strength as a four out five in his left hand and a four plus out of five in
his right hand.  Dr. Bhattacharya found his handgrips to be slightly reduced but functional.
In a consultative internal medicine examination in December 2009, Dr. Mendoza  rated his
grip strength as a three out of five in his left hand and a five out of five on his right hand in the
Range of Motion Values and noted he is right-handed.  Claimant reported how he has not seen a
doctor since 2006, and he cleans the apartment, cooks and goes to the grocery store.  In the
Clinical Impression, Dr. Mendoza noted he has less grip in the left hand.
On July 6, 2011, Dr. Park completed an internal medicine examination on referral by
disability determinations and noted how he sustained trauma to his left index finger resulting in the
amputation in 1996.  In the Range of Motion Values, Dr. Park found Claimant to have grip
strength rated at five in both hands and able to make a fist and his can be opposed.

how the limitations imposed on his manipulative abilities with his left hand by Dr. Mendoza were

inconsistent with other substantial evidence in the medical record and thus questionable. It is the

duty of the ALJ to weigh the evidence of record. See e.g., Richardson v. Perales, 402 U.S. 389,

399 (1971). Opinions of consultative examiners may be discredited by other evidence in the

record. The ALJ reasonably discredited the limitations imposed by Dr. Mendoza that the ALJ

found to be inconsistent with the record as a whole. Under the circumstances, the undersigned

finds that the ALJ fulfilled his responsibilities under the Regulations, by explaining and justifying

the weight that was given to the medical source opinions by opining why he found some opinions

more persuasive the others. Although the record contained conflicting medical opinions as

professed by consultative physicians, the ALJ's obligation is to weight the competing evidence

and draw findings based upon the substantial weight of the evidence of record.

The undersigned finds that the ALJ's determination is supported by substantial evidence on

the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence

presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730

(8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d

259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for

benefits should be affirmed.

The substantial evidence on the record as a whole supports the ALJ's decision. Where

substantial evidence supports the Commissioner's decision, the decision may not be reversed

merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d

1210, 1213 (8th Cir. 1993) (quoting <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992)).

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

       /s/ Terry I. Adelman       
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of January, 2015.